# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | Case No. 1:14-cv-01449-MCE-BAM |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | (Doc. 20) |
| ALI AYUB AL-ARSHAD, individually and d/b/a TAXI'S HAMBURGER RESTAURANT, | **OBJECTIONS DUE: 15 DAYS** |
| Defendant. | |

## I. INTRODUCTION

On May 14, 2015, Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") filed a motion for default judgment against Defendant Ali Ayub Al-Arshad, individually and d/b/a Taxi's Hamburger Restaurant ("Defendant"). No opposition to Plaintiff's motion was filed. The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for July 17, 2015. Having considered the moving papers, the supplemental briefing, and the Court's file, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED and judgment entered in the amount of $3,250.00 against Defendant.

## II. FACTUAL BACKGROUND

On September 17, 2014, Plaintiff filed a complaint pursuant to Title 47 U.S.C. §§ 605(e)(3)(B)(iii) and (c)(ii), 47 U.S.C. § 503 *et seq.*, and Cal. Bus. & Prac. (Plaintiff's Complaint ("Compl."), Doc. 1.). The complaint seeks an award of statutory damages, costs of suit, attorneys' fees, restitution, punitive damages, and prospective injunctive relief.

As alleged in the Complaint, Plaintiff is an international distributor of sports and entertainment programming, and secured the domestic commercial exhibition rights to broadcast the *Ultimate Fighting Championship 165: Jon Jones v. Alexander Gustafsson Program* (the "Program") telecast nationwide on Saturday, September 21, 2013. (Compl., ¶ 14.) Plaintiff entered into sublicensing agreements granting public exhibition rights to various commercial entities throughout the United States and its territories, and within the State of California. (Compl., ¶ 15.) The Program was legally available to commercial establishments only through an agreement with Plaintiff. (Compl., ¶ 15.) Plaintiff expended substantial monies marketing, advertising, promoting, administering, and transmitting the Program to these commercial entities. (Compl., ¶ 16.)

On Saturday, September 21, 2013, Jeffrey R. Andrews, Jr. ("Andrews"), entered Defendant's establishment, Taxi's Hamburgers Restaurant (the "Restaurant"), in Modesto, California, at approximately 7:12 p.m. *See* Declaration of Jeffrey R. Andrews ("Andrews Decl."), Ex. 3, (Doc. 20-3 at p. 2). He noted that the Restaurant had three sections, with one apparently closed to customers, and a total of five television sets showing the Program. (Andrews Decl., at p. 2.) Plaintiff alleges that Defendant intercepted the Program unlawfully, and intentionally exhibited it for the purpose of direct or indirect commercial advantage.

Andrews counted approximately 25 patrons watching the event during most of his stay at the Restaurant, and counted approximately 30-35 patrons watching the event before leaving. (Andrews Decl., at p. 3.) Defendants did not charge a cover to enter the Restaurant while the Program was shown. (Andrews Decl., at p. 2.) Also, while Andrews purchased a beer for a total of $3.50, the Restaurant did not require patrons to purchase food or drink. (*See* Andrews Decl., at pp. 2-3.)

1 Plaintiff further alleges that Defendant knowingly and unlawfully intercepted, received, published, divulged, displayed, and/or exhibited the Program at the time of its transmission at the commercial establishment owned and operated by Plaintiff. (Compl., ¶ 17.) Plaintiff alleges Defendant did so willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain, in violation of 47 U.S.C. § 605, *et seq.* (Compl., ¶¶ 19-21.) Plaintiff seeks statutory damages for each violation in the amount of $10,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), statutory damages for each willful violation in the amount of $100,000 pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), and attorneys' fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). (Compl., ¶ 22.)

On January 24, 2015, the summons was returned showing that service of the summons and complaint was effected on Defendant via substituted service at 1431 Kansas Avenue, Modesto, CA 95351. (Doc. 8). On March 18, 2015, the Court issued an order for Plaintiff to provide a supplemental brief or declaration providing further evidence establishing proper service of process on Defendant. (Doc. 13). Plaintiff filed supplemental evidence explaining that a process server was unable to serve the summons and complaint on Defendant at his place of residence. However, communications with Defendant's neighbor and a Modesto municipal search revealed that Defendant is also a licensee of a separate business entity "Country Dream Furnishings," located at same address of 1431 Kansas Avenue, Modesto, CA 95351, where service of substituted. (Doc. 14). Plaintiff's supplemental evidence satisfied the Court's concerns about the sufficiency of service of process, and the Clerk of the Court entered default against Defendant on April 3, 2015. (Doc. 15).

On May 14, 2015, Plaintiff filed a motion for default judgment against Defendant, which is currently pending before the Court. (Doc. 20.)

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered

3

judgment. *See id.* Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

A plaintiff is required to prove all damages sought in the complaint. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992). In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys., Inc.*, 826 F.2d at 917.

## IV. DISCUSSION

### A. The *Eitel* Factors Favor Entry of Default Judgment

Many of the *Eitel* factors favor entry of default judgment in this case. Considering the first factor, if Plaintiff's application for default judgment were to be denied, it would leave Plaintiff without a remedy because Defendant has refused to litigate this action. Therefore, Plaintiff would be prejudiced if the Court were to deny its application for default judgment. This factor weighs in favor of default judgment. *See J & J Sports Prods, Inc. v. Concepcion*, No. C-10-CV-05092 WHA, 2011 WL 2220101 at *2 (N.D. Cal. June 7, 2011).

In contrast, Plaintiff's request for maximum statutory damages weighs against granting an entry of default judgment, particularly because the amount requested appears disproportionate to the harm alleged. *See Eitel*, 782 F.2d at 1472. However, given that the Court may address the

reasonableness of Plaintiff's request when deciding the question of damages, the Court need not deny default judgment on this factor alone. *See Joe Hand Promotions, Inc. v. Mujadidi*, No. C-11-CV-5570 EMC, 2012 WL 3537036, at *3 (N.D. Cal. Aug. 14, 2012) (noting that a request for maximum possible statutory damages "is not enough on its own to bar a default judgment . . . as it may be addressed by the Court in deciding what damages should be awarded, assuming that a default judgment is otherwise appropriate").

As to the second and third *Eitel* factors, Plaintiff's substantive claims appear meritorious and its complaint is sufficiently plead. Plaintiff has alleged that Defendant violated two sections of Title 47 and the alleged activities of Defendant appear to have violated one or both of those sections. Plaintiff has also set forth the applicable laws pursuant to which the court may provide relief. These factors weigh in favor of default judgment.

As to the fourth factor, the damages in this case cannot exceed the amounts specified in 47 U.S.C. § 605 (for reasons more fully explained below), and the maximum amount allowable for the tort of conversion. Accordingly, statutory damages cannot exceed $10,000 and enhanced damages may not exceed $100,000. *See* 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii). Plaintiff is seeking $110,000 in statutory and enhanced damages and $750 in damages for conversion, or the amount Defendant would have been required to pay for the license. Though Plaintiff seeks the maximum statutory damages amount possible, the relatively small sum of money at stake and the Court's discretion in awarding enhanced damages weigh in favor of granting default judgment.

As to the fifth factor, there is no dispute of material fact. Indications that there is a dispute of material fact can weigh against entry of default judgment. *See Eitel*, 782 F.2d at 1471-72. Here, Defendant has not disputed any of Plaintiff's contentions since Defendant failed to respond to either the Complaint or this motion, and all material facts pled in the Complaint are supported or explained by a declaration.

Considering the sixth factor, it is unlikely that default was the result of excusable neglect. This action was filed over eight months ago and the docket reveals that Defendant was properly notified of this action by substitute service. (Docs. 1, 14.) In addition, Defendant was served with

a copy of the motion for default judgment. (Doc. 20 at 5.) Defendant failed to respond despite these notifications. This factor weighs in favor of default judgment.

Finally, the seventh factor supports a default judgment because "although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate." *J & J Sports Prods., Inc. v. Concepcion*, 2011 U.S. Dist. LEXIS 60607, at *5 (N.D. Cal. June 7, 2011). Therefore, this general policy is outweighed by the more specific considerations, and the motion to enter default judgment will be granted.

Accordingly, the Court RECOMMENDS that Plaintiff's Motion for Default Judgment be GRANTED.

**B.    Calculation of Damages**

Plaintiff requests $10,000 in statutory damages for violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), and $100,000 in enhanced damages for willful violation of 47 U.S.C. § 605(e)(3)(C)(ii). (Doc. 20-1 at 12-21.) Plaintiff also seeks $750 in conversion damages, the minimum amount Defendant allegedly would have been required to pay had Defendant licensed the Program from Plaintiff. (Doc. 20-1 at 22.)

**1.    Statutory Damages**

Plaintiff requests $10,000 in statutory damages as a result of the alleged violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), which prohibits any person from receiving or transmitting "wire or radio" signals except through authorized channels. (Doc. 20-1 at 12.) More specifically, the statute "'prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming.'" *J & J Sports Prods., Inc. v. Ro*, No. 09-CV-02860, 2010 WL 668065 at *3 (N.D. Cal. Feb. 19, 2010) (quoting *J & J Sports Prods., Inc. v. Guzman*, No. 08-CV-05469, 2009 WL 1034218 at *2 (N.D. Cal. Apr. 16, 2009)). The statute provides statutory damages ranging from $1,000 to $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff states that Defendant violated Section 605 because "[w]ith full knowledge that the *Program* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, . . . Defendant . . . did unlawfully intercept, received, publish, divulge, display, and/or exhibit the *Program* at the time of its transmission at their

6

commercial establishment...." (Compl. ¶ 17 (italics in original).)  However, Plaintiff fails to state the actual means of signal transmission used, which is necessary to determine whether a Plaintiff should be awarded maximum statutory damages pursuant to Section 605.  (*See* Doc. 20-1 at 8) (stating "Plaintiff cannot determine the precise means that the Defendant used to receive the Program unlawfully").  *See also J & J Sports Prods., Inc. v. Deleon*, No. 5:13-CV-02030-EJD, 2014 WL 121711 at *3 (N.D. Cal. Jan. 13, 2014).  Indeed, the declaration of Plaintiff's affiant, Jeffrey Andrews, does not state whether the establishment has a satellite dish or whether a cable box was affirmatively visible.  (*See* Andrews Decl., pp. 2-3.)  Plaintiff contends the court has discretion to award significant damages "[e]ven in . . . cases of commercial signal piracy where there has been no egregious circumstances noted[.]"  (Doc. 20-1 at 12.)

It is undisputed Defendant did not charge a cover for patrons to enter the Restaurant to watch the Program, nor did Defendant increase prices, or require food and drink purchases.  There were also very few patrons in the bar and only five televisions broadcasting the Program.  (*See* Andrews Decl, p. 2.)  Plaintiff also presents no evidence Defendant is a repeat offender.  Given these facts, the Court in its discretion finds the minimum statutory damage amount to be appropriate.

Accordingly, the Court RECOMMENDS that Plaintiff be awarded the minimum statutory damages allowed, $1,000.

**2.     Enhanced Damages**

Plaintiff also requests enhanced damages pursuant to Section 605(e)(3)(C)(ii). (Doc. 20-1 at 15-21.)  This section authorizes the Court to award up to $100,000, in its discretion, upon finding that the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).

The Ninth Circuit has not set forth controlling factors for the determination of when enhanced damages are appropriate in this context, but various factors specific to this unique line of cases have been considered by district courts.  These include the "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant."  *Concepcion*, 2011 U.S.

7

Dist. LEXIS 60607, at * 10. Enhanced damages have also been awarded when the defendant has violated Section 605 on previous occasions. *See J & J Sports Prods., Inc. v. Paniagua*, 2011 WL 996257, at *2 (N.D. Cal. Mar 21, 2011).

The Court does not find that an award of maximum damages under Section 605 is appropriate here. There is no evidence of significant "commercial advantage or private financial gain" in the instant case. Plaintiff has presented evidence that Defendant had five television sets in his commercial establishment that displayed the Program, and the affiant asserts that there were between 25-35 patrons present during its investigation. (*See* Andrews Decl., p. 2-3.) However, as already discussed, there is no evidence that Defendants assessed a cover charge, required a minimum purchase from patrons, or had a special premium on food and drinks on the night of the fight. *See Kingvision Pay-PerView, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198 n.2 (N.D. Cal. 2000) (stating that "[a]n establishment that does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's framers."). Plaintiff has also failed to present evidence that Defendant has violated Section 605 on prior occasions.

In light of the above mentioned facts, the Court does not agree that the maximum enhanced damages award is warranted. Although Plaintiff cites to several out-of-district cases to support its request for maximum enhanced damages possible (Doc. 20 at 15-21), Plaintiff has not cited any binding precedent or identified any specific circumstances that justify such a high award here. Accordingly, the Court concludes that an award of $1,500—twice the value of the commercial license to air the program—is more than adequate and just to compensate Plaintiff for lost profits and to deter Defendant's future infringement.

Therefore, the Court RECOMMENDS that Plaintiff be awarded $1,500 in enhanced damages.

**3. Conversion**

Plaintiff also seeks $750 in damages for conversion under California Civil Code § 3336. (Doc. 20-1 at 22.) Damages for conversion are based on the value of the property at the time of conversion. *See Tyrone Pac. Intern., Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981).

Here, Plaintiff has shown that it owns the right to distribute the boxing match at issue and has properly alleged the misappropriation of that right to distribute the program. As to damages, the "value of the property" was the minimum commercial license fee for the Program, or $750.

Accordingly, the Court RECOMMENDS that Plaintiff be awarded $750 in damages for conversion.

### IV.  Conclusion

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's application for default judgment (Doc. 20) be GRANTED and judgment entered be entered in favor of Plaintiff and against Defendant in the amount of $3,250 in total damages.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **August 17, 2015**                    /s/ *Barbara A. McAuliffe*
                                                                   UNITED STATES MAGISTRATE JUDGE